## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## DAVENPORT DIVISION

| | |
|---|---|
| WALKESHEIA WARD, DARLENA MCBRIDE, and TONYA GARDNER, ) ) ) | |
| Plaintiffs, ) ) ) | |
| ) | Judge |
| v. ) ) | Jury Trial Demanded |
| VON MAUR, INC., ) ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiffs, Walkesheia Ward, Darlena McBride, and Tonya Gardner (collectively

"Plaintiffs"), by their attorneys Pedersen & Weinstein LLP, allege for their Complaint against

Defendant Von Maur, Inc. ("Von Maur" or "Defendant") as follows:

## JURISDICTION AND VENUE

1.    Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343, and principles of pendent

and supplemental jurisdiction

2.    Venue is proper in the Southern District of Iowa pursuant to 28 U.S.C. § 1391(a).

## PARTIES

3.    Walkesheia Ward ("Ward"), who is African American, is an adult individual who,

at all times relevant to this Complaint, has been a resident of the State of Iowa.  Ward applied for

a position with Defendant in May 2003, but was denied employment on the basis of her race.

4.    Darlena McBride ("McBride"), who is African American, is an adult individual

who, at all times relevant to this Complaint, has been a resident of the State of Iowa.  McBride

applied for a position with Defendant in May or June 2003, but was denied employment on the basis of her race.

5.     Tonya Gardner ("Gardner"), who is African American, is an adult individual who, at all times relevant to this Complaint, has been a resident of the State of Iowa.  Gardner applied for a position with Defendant in May 2003, but was denied employment on the basis of her race.

6.      Von Maur is a retail department store with twenty-two stores in Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Nebraska and Kansas.  Additionally, Von Maur has several warehouses/distribution centers that support the retail stores.  One such warehouse is located in Davenport, Iowa. At all times relevant to this Complaint, Defendant employed more than fifteen (15) employees and was engaged in an industry affecting commerce.

**FACTUAL ALLEGATIONS**

***Von Maur Systematically Excludes African American Applicants From Employment***

7.     Notwithstanding the African American population in Davenport and Scott County, Iowa, Von Maur employs very few African Americans in its retail store and warehouse. Upon information and belief, and based on Census Bureau data for Davenport and Scott County, in a race neutral environment, Von Maur would have employed two to three times the number of African Americans actually employed during the relevant time period.

8.     The makeup of Von Maur's employee population is skewed by race because of its intentionally discriminatory hiring practices, which include, but are not limited to the following:

   a.  failing to interview qualified African Americans for available positions;

   b.  requiring African Americans to submit multiple applications before granting them interviews;

   c.  "losing" or "misplacing" applications of African Americans;

d. discouraging African Americans from applying by claiming there are no available positions;

e. subjecting African Americans to stricter scrutiny during interviews;

f. exaggerating the job requirements to make it appear that African American applicants are not qualified; and

g. denying African Americans employment based on pretextual claims of "poor credit history."

***Von Maur Engaged In A Pattern And Practice Of Race Discrimination***

9. Von Maur has and continues to engage in a pattern and practice of race discrimination. As further evidence of Von Maur's discriminatory animus, upon information and belief, the few African Americans who have been hired by Von Maur have been subject to race discrimination and retaliation. For example, one African American woman was terminated from Von Maur's warehouse shortly after she complained that her supervisor made racist comments to her. Further, it is not uncommon for African Americans hired by Von Maur to be terminated within a short period of time for pretexual reasons. For example, the Davenport Civil Rights Commission recently ordered Von Maur to compensate a former African American employee who worked in Von Maur's retail store after finding her termination was a pretext for discrimination.

10. Consistent with the discriminatory hiring practices described above, each Plaintiff applied for and was denied a position with Von Maur based on race.

***Walkesheia Ward***

11. Ward applied for a full time position with Von Maur on or about May 29, 2003. Ward learned that Von Maur was hiring from an advertisement in the local paper. At the time of

her application, Ward was a pursuing a degree at Scott Community College and had several years of work experience.

12.    Von Maur Human Resource Manager, Lisa Harthoorn ("Harthoorn"), interviewed Ward at 10:00 a.m. on or around May 30, 2003.  Von Maur provides interviewers such as Harthoorn with a list of questions called the Warehouse First Interview Questions.  The list contains fifteen questions that are purportedly tailored to various positions.  Upon information and belief, during Ward's interview, she was only asked approximately five questions from this list.  Harthoorn did not ask questions that would have elicited Ward's strengths and qualifications.  For example, Harthoorn failed to ask Ward "what are three qualities you feel you could bring to Von Maur," and "tell me about your most recent group effort. What was your role in reaching the goal?"  Instead, Harthoorn asked whether Ward would be available to work overtime and whether her class schedule would interfere with the required work hours.  Ward responded that she was interested in working overtime and that her school schedule would not interfere with the required work hours.

13.    Notwithstanding Ward's qualifications, expressed interest in the position and availability, Harthoorn subjected Ward to undue scrutiny during the interview.  To Ward, it appeared that Harthoorn had made up her mind about Ward before she asked a single question.  Harthoorn continued to press Ward about her hours of availability even after Ward confirmed that her classes would not interfere with work.

14.    At no time during the interview did Harthoorn provide any details to Ward about the available job.  At the end of the interview, Harthoorn told Ward that there were no more positions available.  When Ward questioned Harthoorn why she was interviewed if there were no positions available, Harthoorn told her Von Maur conducted random interviews on occasion.

4

15.     Later on May 30, 2004, Ward's Caucasian friend, Kristy Renkosik ("Renkosik"), also had an interview with Von Maur for the same position.  Like Ward, Renkosik applied at Von Maur on May 29, 2003, in response to an advertisement in the local paper.  Renkosik was also interviewed by Harthoorn, but her interview experience was very different than Ward's.

16.     Unlike Ward, upon information and belief, Harthoorn asked Renkosik approximately ten questions from the Warehouse First Interview Question, including "what are three qualities that you feel you could bring to Von Maur," (Renkosik apparently only answered with one quality) and "tell me about your most recent group effort. What was your role in reaching the goal?" Also unlike Ward, Renkosik was given a second interview with manager Cathy Rockwell.  Renkosik was not asked about her availability for overtime, and unlike Ward, Renkosik was given a tour of the warehouse and was told that Von Maur was an excellent place to work.  Von Maur did not tell Renkosik there were no positions available; instead, Von Maur offered Renkosik a position, notwithstanding the fact that only hours earlier, Harthoorn had told Ward there were no more positions available.

17.     Ward subsequently received a letter from Von Maur that provided a different explanation for the reason she was not hired.  The letter simply stated words to the effect of, "you were given consideration for a position; however, at this time we are pursuing other candidates."  Von Maur never provided a legitimate, nondiscriminatory reason for not hiring Ward.

18.     After rejecting Ward and hiring Renkosik, Von Maur continued to pursue other candidates.  Von Maur interviewed and hired several equally or less qualified white and non-minority applicants for the position Ward was told was no longer available.

*Tonya Gardner*

19.    Gardner applied at Von Maur in or around May of 2003.  Like Ward, Gardner applied in response to an advertisement in the local newspaper.  After Gardner filled out her application, she was told by a Von Maur representative that she would be contacted by someone from Von Maur within a week.

20.    However, when Gardner heard nothing from Von Maur, she went back to check on the status of her application.  At that time, Gardner was told that Von Maur "lost" her application and was questioned whether she was sure she had applied.  Gardner watched two women shuffle through papers, but they never found her application.  Gardner was required to fill out a second application before she was interviewed.

21.    Gardner was qualified for the position, and during her interview the Von Maur representative commented to Gardner that her past warehouse experience would be helpful for the job. Gardner felt that the interview went well, but shortly thereafter, she received a generic rejection letter.  Von Maur never provided a legitimate non-discriminatory reason for failing to hire Gardner.

22.    After Gardner was rejected, she continued to see advertisements that Von Maur was hiring for the same position.  Von Maur continued to interview and hire equally or less qualified white and non-minority applicants.

*Darlena McBride*

23.    McBride also applied at Von Maur in or around May of 2003.  McBride filled out an application and, like Gardner, was told she would hear from Von Maur within a week. However, McBride never heard from Von Maur, so she went back to Von Maur to check on the

status of her application.  Also like Gardner, McBride was told that her application had been "lost."  McBride was required to fill out a second application before she was interviewed.

24.    McBride felt the interview went well and was confident she would be offered a position, especially because the interviewer told her she was applying at a good time because Von Maur had so many positions available.  Moreover, the interviewer told McBride Von Maur would call her to let her know where she would be placed.  However, on or about June 12, 2003, McBride received a generic rejection letter.  Von Maur never provided a legitimate non-discriminatory reason for failing to hire McBride.

25.    After McBride was rejected, Von Maur continued to interview and hire equally or less qualified white and non-minority applicants for the same position for which she applied.

### *The Company Failed to Exercise Reasonable Care To Prevent and Correct Unlawful Conduct*

26.    Von Maur's failure to hire Ward, Gardner, McBride and countless other African American applicants has resulted in a disproportionately low percentage of African American employees at Von Maur.

27.    Defendant's management directed, encouraged, and participated in the above-described unlawful conduct.  Further, Defendant failed to exercise reasonable care to prevent and correct promptly any race discrimination.

28.    Plaintiffs did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

29.    The discrimination described above was consistent with Defendant's standard operating procedure.

30.    Defendant acted with malice or with reckless indifference to the federally protected rights of Plaintiffs.

*Ward Timely Filed Charges of Discrimination*

31.     Ward timely filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") and Davenport Civil Rights Commission in August of 2003.

Ward requested a Notice of Right to Sue on December 27, 2004.

*Plaintiffs Suffered Damages*

32.     As a direct result of the unlawful conduct Plaintiffs experienced, they have

suffered extreme emotional distress.

33.     Plaintiffs have lost wages, compensation and benefits as a result of Defendant's

unlawful conduct.

34.     Plaintiffs' careers and reputations have been irreparably damaged as a result of

Defendant's unlawful conduct.

35.     Plaintiffs suffered loss of enjoyment of life, inconvenience and other non-

pecuniary losses as a direct result of Defendant's unlawful conduct, as well as incurring

attorneys' fees and costs.

*Punitive Damages*

36.     Defendant acted and/or failed to act with malice or willfulness or reckless

indifference to Plaintiffs' rights.  The conduct alleged herein was willful and wanton and justifies

an award of punitive damages.

## COUNT I

### RACE DISCRIMINATION IN VIOLATION OF TITLE VII

### (Ward v. Von Maur)

37.     Ward realleges paragraphs 1 through 36 and incorporates them by reference as

paragraphs 1 through 36 of Count I of this Complaint.

38.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et al., as amended by the Civil Rights Act of 1991 ("Title VII"), makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment, on the basis of race.

39.    By the conduct as alleged herein, Defendant subjected Ward to racial discrimination in violation of Title VII.

## COUNT II

### RACE DISCRIMINATION IN VIOLATION OF SECTION 1981

### (All Plaintiffs v. Von Maur)

40.    Plaintiffs reallege paragraphs 1 through 39 and incorporates them by reference as paragraphs 1 through 39 of Count II of this Complaint.

41.    42 U.S.C. §1981, as amended by the Civil Rights Act of 1991, ("Section 1981"), prohibits discrimination based on race in the performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42.    By the conduct as alleged herein, Defendants subjected Plaintiffs to race discrimination in violation of Section 1981.

## COUNT III

### RACE DISCRIMINATION IN VIOLATION OF THE IOWA CIVIL RIGHTS ACT

### (Ward v. Von Maur)

43.    Ward realleges paragraphs 1 through 42 and incorporates them by reference as paragraphs 1 through 42 of Count III of this Complaint.

44.    The Iowa Civil Right Act, Iowa Code §216.1 et seq., makes it unlawful to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to

9

otherwise discriminate in employment against any applicant for employment or any employee because of the race of such applicant or employee

45.    By the conduct as alleged herein, Defendant subjected Ward to race discrimination in violation of the Iowa Civil Rights Act.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN VIOLATION OF IOWA COMMON LAW

### (All Plaintiffs v. Von Maur)

46.    Plaintiffs reallege paragraphs 1 through 45 and incorporate them by reference as paragraphs 1 through 45 of Count IV of this Complaint.

47.    Iowa law recognizes a cause of action for intentional infliction of emotional distress, which makes unlawful certain extreme and outrageous conduct that results in severe emotional distress.

48.    Defendant intended to inflict severe emotional distress or had actual knowledge that severe emotional distress was certain to occur by engaging in the conduct described herein, in violation of Iowa law.

49.    Through its regular decision-making channels, and by persons authorized to act on behalf of Defendant, Defendant directed, encouraged and participated in the wrongful conduct alleged herein.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Court find in their favor and against the Defendant as follows:

a.    Declare that the acts and conduct of Defendant violate Title VII of the Civil Rights Act of 1964 and 1991, Section 1981, and the Iowa Civil Rights Act;

10

b.      Declare that the acts and conduct of Defendant violate Iowa common law;

c.      Award Plaintiffs the value of all compensation and benefits lost as a result of Defendant's unlawful conduct;

d.      Award Plaintiffs the value of all compensation and benefits they will lose in the future as a result of Defendant's unlawful conduct under Title VII (Ward), Section 1981, Iowa Civil Rights Act (Ward), and Iowa common law;

e.      In the alternative to paragraph (d), reinstate Plaintiffs with appropriate promotions and seniority and otherwise make Plaintiffs whole;

f.      Award Plaintiffs compensatory damages under Title VII (Ward), Section 1981, Iowa Civil Rights Act (Ward), and Iowa common law;

g.      Award Plaintiffs punitive damages under Title VII (Ward), Section 1981, Iowa Civil Rights Act (Ward), and Iowa common law;

i.      Award Plaintiffs prejudgment interest;

j.      Award Plaintiffs reasonable attorneys' fees, costs and disbursements; and

k.      Award Plaintiffs such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: December \_\_\_\_, 2004          Respectfully submitted,

*/s/ Marlita A. Greve*
Attorney for Plaintiff
O'BRIEN & GREVE, P.L.C.
2322 East Kimberly Road
Davenport, IA 52807
Telephone:  (563) 355-6060
FAX: (563) 355-6666
E-Mail:  mag@emprights.com

Subject of *Motion for Admission Pro Hac Vice*
Erika Pedersen
Jill Weinstein
**Pedersen & Weinstein LLP**
309 W. Washington
Suite 1200
Chicago, IL  60606
(312) 855-1200
(312) 855-1207 (facsimile)

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon the attorney of record for each party to the above-entitled cause by enclosing the same in an evelope addressed to each such attorney at their last known address as shown below, with postage fully paid, and by depositing said envelope in a United States Post Office depository on the 29th day of December, 2004.

Copy to:
Diane Reinsch
Lane & Waterman, LLP
224 18th Street, Suite 500
Rock Island, Illinois 61201

*/s/ Marlita A. Greve*

Attorney for Plaintiff
O'BRIEN & GREVE, P.L.C.
2322 East Kimberly Road
Davenport, IA 52807
Telephone:  (563) 355-6060
FAX: (563) 355-6666
E-Mail:  mag@emprights.com

13